**Burns v. GJ Sales Co.**

*Todd T. Zwikl,* for plaintiff.
*Doug Hart,* for defendant.

FRIEDMAN, *J.,* April 11, 2008—This decision is filed pursuant to Pa.R.C.P. 1038. See also, Pa.R.C.P. 227.1(c)(2).

## INTRODUCTION

The captioned matter involves a dispute over commissions plaintiff claims she is owed for work she did for defendant GJ Sales Co. during the years 2003 and 2004. Plaintiff was hired as an independent contractor pursuant to a written agreement (contract) with defendant. The claims against two individual defendants, Mrs. Gee Izworski, defendant's sole shareholder, and Mr. Gene Izworski, her husband and employee of defendant, were voluntarily dismissed[1] prior to the trial,

---

1. An order changing the caption accordingly was entered thereafter.

which was before the undersigned sitting without a jury. Plaintiff has filed two counts against the defendant, one for breach of contract and one for unjust enrichment. Defendant says unjust enrichment is not applicable here and also denies owing plaintiff anything under the contract, saying her breach of the terms of the contract is ample justification for its refusal to pay her the commissions she would otherwise have been entitled to. Defendant has also filed a counterclaim against the plaintiff based on her alleged failure to return product samples, the value of which is said to exceed the amount of those commissions.

The court concludes that the relationship between them is governed by the written contract and agrees with defendant that the count for unjust enrichment must be dismissed, without further discussion.

## DISCUSSION

Defendant asserts four different breaches by plaintiff, (1) working for a competitor of defendant, (2) failing to give defendant a list of upcoming appointments, (3) failing to give 30 days notice, and (4) failing to return samples. The court concludes that the credible evidence shows that plaintiff did not breach the contract in any material way.

### 1. *Plaintiff Did Not Work for a Competitor of Defendant's*

Plaintiff did not breach section E of the contract (plaintiff's exhibit A) when she did some work for another company, Frank Meyers Associates (FMA)

while she was acting as a sales representative for defendant.[2] It is undisputed that plaintiff was an independent contractor for defendant, and the court finds that, under the contract, she was not barred from working for others during the same time period so long as she did not work for competitors of defendant.

Whether or not there was in fact a breach depends on whether or not FMA was a competitor of defendant within the meaning of the contract. Plaintiff believed at the time that it was not. The court finds that her belief was sincerely held at the time. The court finds that plaintiff did not sell any product lines for FMA that were competitive with or similar to the product lines defendant sold. The court also finds that defendant did not provide credible evidence sufficient to rebut the plaintiff's evidence that the lines of gifts she sold for FMA did not compete with the lines of gifts she was selling for defendant. The court does not credit the testimony of Mrs. Izworski that defendant's "competition" with FMA was for shelf space, not for similar product lines, and that the contract therefore should be interpreted accordingly.

To the extent the meaning of the phrase "in competition with GJ" is ambiguous, it must be interpreted against defendant, which drafted it. Plaintiff's understanding that the relevant competition was product lines is credible and not at all unreasonable, especially since she was designated an independent contractor and not

---

2. We note that section E expressly deals only with post-termination competition, but the parties seemed to agree that the same scope of competition would apply prior to termination as well.

an employee by defendant. An "employee" might have a duty not to work for *anyone* else, whether or not a competitor, during the course of his or her employment. An independent contractor, such as plaintiff, would have no such duty. It is also noted that even Mrs. Izworski does not contend that she explained her theory of competition being related to shelf space to plaintiff when she allegedly went over the contract in detail with her.

The court concludes that plaintiff did not breach the contract when she did work for FMA, so this is not a valid excuse for defendant to refuse to pay the commission she was due under the contract.

### 2. *There Was No Breach of the Provision Related to Appointments*

The next issue is whether plaintiff breached the contract by failing to give defendant a list of her outstanding appointments within three days, as required by section F. The evidence on this issue is scant. At trial, plaintiff credibly testified that she had no significant number of appointments, if she had any at all, while Mr. and Mrs. Izworski tried to say she must have had appointments and deliberately did not turn them over to defendant. The Izworskis also tried to assert that the contract required plaintiff to give them her personal appointment book. It does not, so plaintiff's failure to give it to them is not violative of the contract. However, there is no indication that *at the time* the Izworskis were at all concerned that appointments had *not* been given, assuming, arguendo, that this was the case. There

was no evidence adduced that defendant received any feedback from a customer complaining that an appointment was not kept, nor was there evidence of any lost sales to customers who might normally have placed an order. The court believes the supposed list of appointments was a non-issue at the time and that defendant raised it only after deciding it would keep plaintiff's commissions. In summary, the credible evidence does not support the contention that plaintiff failed to give defendant "a record of any future appointments booked."

### 3. *There Was No Breach of the Notice Provision*

Another issue is whether plaintiff should have given defendant 30 days notice of her intention to terminate the contract. The credible evidence shows that defendant waived this requirement and deemed the termination effective immediately. Plaintiff did not breach this portion of the contract.

### 4. *There Is No Merit to Defendant's Counterclaim As There Was No Breach of the Provision Requiring Return of Samples*

The last issue related to breach is whether or not defendant's counterclaim for the value of unreturned samples has merit. The court concludes it does not. The court believes plaintiff's testimony that she returned all the samples that had ever been in her possession except for some "plush" items that were badly damaged by a flood in plaintiff's basement where the items had been stored. Some samples had been returned prior to the

termination of the contract and the others, except for the damaged "plush," were promptly returned after.

## 5. *Calculation of Damages Due Plaintiff*

Having concluded that plaintiff did not breach the contract and that she is entitled to the unpaid commissions due under the contract, the court must next decide what that amount would be. Plaintiff's claim for something approaching $11,000 is based on the assumption that defendant was paid in full for every order plaintiff placed. The virtually undisputed evidence, however, is that a certain number of customers would cancel all or parts of orders or fail to pay for them and that it was also not unusual for a manufacturer to ship only part of the entire order placed by plaintiff. Plaintiff does not contend that her commission was ever calculated on the gross amount of orders *placed.* She admits she was paid based on actual payments defendants received from the various manufacturers represented.

Mr. Izworski testified that defendant had calculated the commissions due under the contract before he and Mrs. Izworski came to believe plaintiff had breached the contract. The amount he then calculated was roughly $3,000. To test the credibility of this estimate, the court accepts as true defendant's contention that gross sales were usually reduced by 30 percent because of cancellations, non-payment by customers, and partial shipments. The outstanding amount of gross sales made by plaintiff as of the date of termination and unaccounted for by defendant is $97,559.53, as shown in the "difference" column of plaintiff's exhibit F, which

is a summary of the information contained on plaintiff's exhibit D, her weekly sales logs for 2004. Reducing that by the 30 percent amount defendant says typically fell through, we have an amount of sales *paid* of $68,291.67 for which defendants would normally have received a commission. Defendant's testimony was that its usual commission rate is 15 percent of what the manufacturers were paid. That results in gross commissions of $10,243.75 received by defendant. It is undisputed that plaintiff was entitled to 70 percent of that amount under the contract.

The amount plaintiff is owed is no greater than $7,170.63. The court concludes there is insufficient credible evidence to support defendant's contention that the amount due plaintiff is $3,000 or lower. Having found defendant's chief witnesses less than credible on so many issues, the court is not inclined to credit their evidence on this issue nor to give them the benefit of the doubt. The court therefore awards plaintiff the amount of $7,000, which reflects a slight reduction of the maximum amount she would be due. That reduction is to account for the admitted possibility that some commissions earned might have been paid after the 90-day limit described in the contract. Plaintiff is also entitled to legal interest of 6 percent per annum on the $7,000 balance due, from January 31, 2005 (the latest date that defendant might reasonably have sent it to plaintiff) through the date of this decision, April 4, 2008. The amount of simple interest for that period is 19.56 percent or $1,369.20.

## CONCLUSION

The full award to plaintiff is $8,369.20. Defendant is entitled to nothing on its counterclaim.

Pursuant to the rules of court cited above, this decision constitutes the verdict of this court; there will be no separate verdict slip filed.